United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN ARNOLD,<br><br>   Plaintiff,<br><br> v.<br><br>UNUM LIFE INSURANCE COMPANY OF AMERICA, et al.,<br><br>   Defendant.<br>_____/ | No. C 09-0671 CRB<br><br>**ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF PLAINTIFF IN PART AND IN FAVOR OF DEFENDANT IN PART** |

  The question presented in this insurance dispute is whether the Defendant Unum Life Insurance Company of America ("UNUM") abused its discretion when it concluded that a settlement payment Plaintiff, an UNUM policyholder, received from his former employer triggered a third-party settlement "offset" provision in the parties' disability insurance contract, thereby reducing Plaintiff's disability benefits by almost $35,000.

  For the reasons explained below, the Court finds that UNUM did not abuse its discretion when it determined that the settlement payment qualified as a "deductible source of income" under the parties' agreement. However, the Court finds that UNUM did abuse its discretion in failing to subtract Plaintiff's settlement-related attorneys' fees from the settlement payment before it calculated the amount by which it reduced Plaintiff's disability payments. The Court therefore GRANTS summary judgment in favor of Plaintiff and REMANDS this case to the claims administrator for a recalculation of the appropriate

reduction in Plaintiff's benefits.

In addition, the Court GRANTS summary judgment in favor UNUM on the issue of whether it may lawfully request Plaintiff's tax returns. By agreeing to provide UNUM with all "appropriate financial records . . . necessary to substantiate [his reported] income," Plaintiff waived any rights he had to withhold the requested returns. *See Crest Catering Co. v. Superior Court of Los Angeles County*, 62 Cal.2d 274 (1965).[1]

## BACKGROUND

### 1. Plaintiff's Employment History and the Settlement Agreement

Plaintiff Stephen Arnold was employed as an IT professional by Chiron Corporation. Joint Statement of Undisputed Material Facts (filed October 6, 2009, Docket No. 30) ("JSUMF") ¶ 6. During his employment, Arnold developed carpal tunnel syndrome. JSUMF ¶ 23. Despite the injury, Arnold successfully worked for Chiron under various medical restrictions for several years. Id. However, on January 31, 2004, Arnold's physician declared his injury "permanent and stationary" and restricted him to working 32 hours a week with keyboarding limited to two hours per day. Id. On March 11, 2004, Chiron informed Arnold that it would no longer be able to meet his medical restrictions and that his last day of employment would be March 12, 2004. Id. ¶¶ 21-23.

Approximately one month after his termination, Arnold's counsel sent a letter to Chiron indicating that Plaintiff had a very strong claim for (1) disability discrimination; (2) failure to accommodate; (3) failure to engage in the interactive process; and (4) wrongful discharge in violation of public policy. Id. ¶¶ 22-24. It also stated that "[i]n addition to lost wages, benefits and emotional distress, [Arnold] is also entitled to punitive damages . . . attorney's fees and costs . . ." Id.

Chiron agreed to settle Arnold's claims in late October/early November 2004. Id. ¶ 25. Pursuant to the parties' settlement agreement, Chiron agreed to make two payments to Arnold: one in November 2004 in the amount of $87,979.00 and another in March 2005 in the amount of $65,984.00. Id. ¶ 30. Notably, the 2005 payment was expressly contingent

---

[1] The Court also notes that Plaintiff did not oppose UNUM's request for summary judgment on this issue.

on Arnold's certifying to Chiron that he had not found employment as of March 12, 2005 that provided him with a gross annual salary that was within ten percent of his gross annual salary at the termination of his employment with Chiron (to meet this criteria Plaintiff would have had to find a job that paid him at least $87,979.00). Id. Arnold so certified and therefore received both payments. Id. ¶¶ 26, 40.

## 2.     The Long Term Disability Insurance Policy

Effective April 1, 1997, UNUM issued a Group Disability Insurance Policy to Chiron Corporation. JSUMF ¶ 1.  The Policy provided group disability coverage to Chiron employees through the Chiron Corporation Group Disability Plan (the "Plan"). Id. ¶ 2. At all material times, UNUM acted as the claims administrator and also as the source of funding for claims approved under the Policy. Id. ¶ 11.  As an employee of Chiron, Plaintiff was a Plan participant. Id.  ¶ 6.

Among its various terms, the Policy contains the following provision:

> **WHAT ARE DEDUCTIBLE SOURCES OF INCOME?**
>
> Unum will subtract from your gross disability payment the following deductible sources of income:
> . . .
>
> 7) The amount that you receive from a third party (after subtracting attorney's fees) by judgment, settlement or otherwise.
>
> . . . Unum will only subtract deductible sources of income which are payable as a result of the same disability.

Green Decl., Ex. A. at UACL00096.

In March 2004, Arnold applied for disability benefits under the Plan. Id.  ¶ 20. After initially denying Arnold's request for benefits, UNUM approved his claim in May 2005. Green Supp. Decl. Ex. D.  It agreed to pay benefits retroactive to September 2004 and continues to make monthly benefit payments to Plaintiff in the amount of $5,261.67. Id.; JSUMF  ¶ 34.

In March 2008, UNUM, perhaps suspecting that Arnold had failed to report all of his income, requested copies of Arnold's tax returns for the years 2002 through 2007. JSUMF ¶ 34. After initially objecting to the request on the ground that his tax returns were privileged,

3

Plaintiff eventually supplied UNUM with copies of his tax returns for 2004 and 2005. Id. ¶¶ 36, 37.

Those tax returns revealed that Arnold's income in 2004 and 2005 was higher than he had previously reported to UNUM. JSUMF ¶ 27. When the insurer asked Arnold to explain the additional income, he informed UNUM, for the first time, of the settlement payments he had received from Chiron. JSUMF ¶¶ 38, 39; Green Decl. Ex. B at UACL01442. He explained how he reported the settlement payments on his tax returns in the following way:

On his 2004 tax return, he reported the 2004 settlement payment of $87,979 as two different sources of income. He listed half of it ($43,990) as "Wages, salaries, tips, etc." This listing was consistent with a W-2 that Chiron had sent Plaintiff that also listed half of the settlement payment as "Wages, Tips, etc." He listed the remaining half as self-employed business income from a purported consulting business. JSUMF ¶ 40; Green Decl. Ex. B. at UACL01325 *et seq*.

Importantly, Arnold did not report any of the settlement funds as "Other Income" on line 24 of his Form 1040. Green Decl. Ex. B. at UACL01325. It is on the "Other Income" line that the IRS instructs taxpayers to report income from settlements and court awards. See IRS Publication 525, Taxable and Nontaxable Income (2009), at 31. Nor did Arnold exclude any portion of the settlement payment from his reported income because it qualified as "damages [he] receiv[ed] for emotional distress due to a physical injury," though such exclusions are permitted by the IRS. *See id.*

On his 2005 return, Arnold similarly divided the $65,984 settlement payment he received from Chiron equally between "Wages, tips, etc." and self-employed business income. JSUMF ¶ 40. He again failed to list the settlement as other income or exclude any amount for emotional distress damages. *See* Green Decl. Ex. B at UACL01325 *et seq*.

After describing how he reported the settlement payments on his tax returns, Arnold informed UNUM that, despite his listing the settlement payments as wages and employment income on his tax returns, the settlement payments "were *not* wages or compensation for work Mr. Arnold performed during his period of disability; rather, they were compensation

4

or consideration for his release of discrimination and wrongful termination claims against Chiron." JSUMF ¶ 40 (emphasis in original).

Two weeks after receiving this information from Arnold, UNUM informed him that "the lump sum settlement payments [he] received in 2004 and 2005 from his prior employer, Chiron Corporation, [were] subject to a third party deduction." Id. ¶ 41-44. Specifically, UNUM told Plaintiff it had determined that the settlement payment qualified as an "amount . . . receiv[ed] from a third party (after subtracting attorney's fees) by judgment, settlement, or otherwise." Hence, the settlement payments qualified as a "deductible source of income" under the Policy provision described above.

Applying the deduction, UNUM concluded that it had overpaid Arnold $34,845.22 in benefits for the period from September 2004 through December 2005. Id. ¶ 42. UNUM explained by letter dated September 29, 2008, how it calculated the overpayment:

> The settlement amount Mr. Arnold received in 2004 in the amount of $87,979.00 was pro-rated from his date of disability, 3/15/04, through 12/31/04. The monthly deduction in 2004 would be $9,228.57. The settlement amount Mr. Arnold received in 2005 in the amount of $65,984.00 was divided by 12 months and the monthly deduction would be $5,498.67. As a result, Mr. Arnold was over paid in the amount of $34,[845.22].

Id. ¶ 44.

Arnold appealed UNUM's decision to treat the Chiron settlement payments as a "deductible source of income" under the Policy. JSFUMF ¶ 46. On November 21, 2008, UNUM Appeals Consultant Katherine Durrell wrote to Arnold's counsel to advise that UNUM's decision to treat the Chiron settlement as a "third party deduction" was upheld on appeal. Id. ¶ 47. UNUM collected the overpayment by withholding benefits from July 2008 to February 2009. Id. ¶ 45, 48.

In February 2009, Plaintiff filed the instant lawsuit. He brings a claim for a recovery of Plan benefits under § 1132(a)(1)(B) of the Employment Retirement Income Security Act ("ERISA"). Amended Compl. ¶ 25. In essence, Plaintiff argues the UNUM erred in concluding that the settlement payment constituted a "deductible source of income" under the Plan and therefore improperly withheld $34,845.22 in disability benefits to which he was

5

entitled.

Now pending before the Court is UNUM's motion for summary judgment on Arnold's claim.

## LEGAL STANDARDS

### 1. Summary Judgment Standards

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is "material" only if it could affect the outcome of the suit under governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

### 2. Standard of Review in ERISA Cases

"[T]he Supreme Court has held that a denial of benefits is to be reviewed under a de novo standard unless the benefit plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Montour v. Hartford Life & Acc. Ins. Co., 588 F.3d 623, 629 (9th Cir. 2009) (internal quotation marks and citations omitted). Where "the plan does grant such discretionary authority, [courts] review the administrator's decision for abuse of discretion." Id. (citations omitted).

An abuse of discretion standard applies here. The Policy expressly states that "[w]hen making a benefit determination under the policy, Unum has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the policy." Thus, the Plan clearly gives UNUM "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Id.

## DISCUSSION

The question presented here is whether UNUM abused its discretion when it concluded that the settlement payments Arnold received from Chiron qualified as a "deductible source of income" under the Policy. Because UNUM's conclusion that the

1 settlement payment triggered the offset provision was reasonable in light of the facts
2 presented to it, the Court finds that the insurer did not abuse its discretion, with one
3 exception.  See Saffle v. Sierra Pacific Power Co. Bargaining Unit Long Term Disability
4 Income Plan, 85 F.3d 455, (9th Cir. 1996) (noting that, where a plan administrator has the
5 discretion to interpret the terms of a policy, a court's "inquiry is not into whose interpretation
6 of the plan documents . . . is most persuasive, but whether the plan administrator's
7 interpretation is unreasonable").  The one area in which UNUM did abuse its discretion is in
8 failing to deduct attorney's fees from the settlement before calculating the amount of the
9 offset, a deduction that the Plan expressly requires it to make.  See Green Decl., Ex. A. at
10 UACL00096 ("Unum will subtract from your gross disability payment . . . [t]he amount that
11 you receive from a third party (*after subtracting attorney's fees*) by judgment, settlement or
12 otherwise.") (emphasis added).  Accordingly, the Court GRANTS summary judgment in
13 favor of Arnold and REMANDS this case to the claims administrator for a recalculation of
14 the amount it overpaid to Arnold.

15      **1.**     **Applicability of the Offset Provision**

16 The Plan provision at issue provides that UNUM "will subtract from your [monthly]
17 gross disability payment . . . [any] income . . . you receive from a third party (after
18 subtracting attorney's fees) by judgment, settlement or otherwise," provided that the
19 settlement income was the "result of the same disability."  See Green Decl., Ex. A. at
20 UACL00096.  Arnold maintains that it was unreasonable for UNUM to conclude that the
21 settlement payment he received from Chiron qualifies as "income" he received from a "third
22 party settlement" as a "result of [his carpal tunnel syndrome] disability."  For the reasons
23 discussed below, the Court disagrees.

24 Before addressing Arnold's specific arguments, the Court notes that it agrees with
25 Arnold's assessment of the overall purpose of the offset provision, which he describes as
26 "solely to prevent an insured from 'double dipping' for the same lost income from multiple
27 sources of disability benefits."  Opp. at 1.  In other words, the Court agrees with Arnold that
28 the provision is intended to ensure that a claimant does not receive "*duplicate* payments for

7

wages [and other income] lost because of the same physical disability." Opp. at 14 (emphasis in original); see also Opp. at 10 (asserting that the "obvious purpose" of the offset provision is to avoid the double payment of "disability-related income loss"). Unlike Arnold, however, the Court finds that it was perfectly reasonable for UNUM to conclude that the settlement payment was intended to "compensate him for his disability-related income loss."

Arguing to the contrary, Arnold maintains that UNUM's conclusion was unreasonable in five respects. First, he contends that UNUM could not reasonably have considered the settlement payments to have been "payable as a result of the same disability." In Arnold's view, the payments were "a result" of Chiron's "discrimination against [him]" and not of his disability. Opp. at 10.

This argument is unpersuasive. Based on the evidence available to UNUM during the claims evaluation process, it was not unreasonable for the insurer to conclude that the settlement resulted from Arnold's disability. For instance, paragraph three of Arnold's settlement agreement with Chiron states "Arnold has asserted legal claims against Chiron *related to the physical injury he suffered during his employment with Chiron*." JSUMF ¶ 27. Moreover, the demand letter Arnold sent to Chiron after he was terminated indicated that Arnold sought damages for Chiron's "fail[ure] to reasonably accommodate [his] disability" and for its "wrongful discharge" of Arnold on account of his disability.

As these documents demonstrate, Arnold's claims against Chiron were directly related to his disability. In fact, these documents show that Arnold's disability was a direct cause of his legal claims against Chiron and the resulting settlement. Had Plaintiff not suffered from carpal tunnel syndrome, he would not have been able to assert the legal claims against Chiron that are detailed in his demand letter, and there would have been no resulting settlement of those claims. Thus, it was not unreasonable for UNUM to conclude that the settlement was "payable as a result of the same disability" for which UNUM was paying Arnold monthly disability benefits.

Second, Arnold asserts that UNUM acted unreasonably in failing to consider whether some or all of the settlement payments were intended to compensate Arnold for non-income-

8

related damages, such as emotional distress damages, punitive damages, and medical expenses. As noted, Arnold asserts that the offset provision was intended to apply only to payments for lost wages and other income. Punitive damages and emotional distress damages would, in Arnold's view, fall outside the provision's scope.

Even assuming Arnold's narrow interpretation of the scope of the offset provision is correct, UNUM did not act unreasonably in determining that all of the settlement was attributable to lost wages and income. The administrative record is replete with evidence that the settlement payments were intended solely to compensate Arnold for lost wages and other employment income. First and perhaps foremost, Arnold himself reported the settlement payments as "Wages, tips, etc." and self-employed business income on his 2004 and 2005 tax returns. He did not list the payments on the "Other Income" line of his tax return, where the IRS directs taxpayers to report settlement payments and payments for punitive damages. He likewise failed to exclude any part of the settlement payment as "damages . . . receiv[ed] for emotional distress due to a physical injury," an exclusion the IRS permits. Arnold's tax returns therefore strongly indicate that the settlement payments were intended to compensate Arnold for lost wages and income.

Second, according to Arnold and Chiron's settlement agreement, Arnold's 2005 payment, which Chiron paid four months after the 2004 payment, was expressly contingent on Arnold's not obtaining work not obtaining a job that paid him at least $87,979.00 within the intervening period. This fact too suggested that the settlement was aimed at compensating Arnold for lost income.

Third, the demand letter Arnold mailed to Chiron indicated that Arnold had claims against Chiron for wrongful termination and employment-related violations of the Americans with Disabilities Act. Green Decl. Ex. B at UACL01446-48. The recovery of lost wages and income is the central component of such claims. See, e.g., Rivera v. Baker West, Inc., 430 F.3d 1253, 1259 (9th Cir. 2005) (noting that "claims under Title VII and the [Age Discrimination in Employment Act] . . . are all designed to approximate [] recovery for lost wages and other economic harms").

9

Finally, although Arnold informed Chiron in the demand letter that he would seek emotional distress and punitive damages in addition to lost wages, the settlement agreement does not indicate that such damages were paid. To the contrary, paragraphs 8a and 8b of the agreement stated that Chiron planned to report half of the settlement payment to the IRS on a Form W-2 "Wage and Tax Statement" and half on a Form 1099 "Miscellaneous Income" statement. Though the half reported on the Form 1099 could have represented a payment for emotional distress or punitive damages, the settlement agreement does not so state, and, as already discussed, Arnold chose to report that portion of the settlement as self-employed business income on his tax returns, not as compensation for punitive or emotional distress damages.

In sum, the Court finds that it was reasonable for UNUM to conclude, based on the information in the administrative record, that the settlement payments Arnold received from Chiron were intended to compensate him for lost wages and employment income. Arnold's tax returns, the settlement agreement, and the nature of Arnold's legal claims against Chiron all strongly indicated that the purpose of the settlement was to provide Arnold with compensation for income he lost as a result of his termination.

Arnold next argues that his settlement with Chiron could not have triggered the offset provision because Chiron was not a "third party" to the insurance contract between Arnold and UNUM. See Green Decl., Ex. A. at UACL00096 (stating that UNUM will subtract income the policyholder "receiv[es] from a *third party* (after subtracting attorney's fees) by judgment, settlement or otherwise") (emphasis in original). Chiron cannot be considered a third party, Arnold maintains, because the company is listed as the "Employer" and the "Policyholder" on the Plan documents. See Green Decl. Ex. B at UACL00079.

The Court finds that it was not unreasonable for UNUM to conclude that Chiron qualifies a "third party" under the offset provision. The provision addresses "income" "you" receive from a "third party" that is deductible from "your gross disability payments." See Green Decl. Ex B. at UACL00095. In other words, the provision refers to settlement income "you" receive from a party other than the party that is paying "your gross disability

10

payments." Under the Policy, "YOU means an employee who is eligible for Unum coverage." Id. at UACL00114. In addition, "gross disability payments" are paid by UNUM to the employee. See id. at UACL00083. ( "Unum will make the [gross disability] payments to you."). In context, then, it is reasonable to interpret the term "third party" as referring to a party other than the employee, who receives the gross disability payments, and UNUM, who makes those payments. Chiron is just such a party.

In sum, because UNUM, and UNUM alone, makes Arnold's "gross disability benefit payments" and because the term "third party" can reasonably be interpreted as referring to a party other than the party that makes Arnold's disability payments (i.e., UNUM), it was not unreasonable for UNUM to consider Chiron a "third party."

In his fourth argument, Arnold contends that, even assuming that the settlement payments were "deductible sources of income," UNUM abused its discretion by taking "the entire amount of the November 2004 settlement payments as an offset, even though UNUM did not begin to pay Plaintiff income-replacement benefits until more than 6 months later." Opp. at 23. Stated differently, Arnold argues that UNUM should not have used the 2004 settlement payment to offset the benefits it paid Arnold because UNUM did not pay any disability benefits to Arnold in 2004.

This issue arises as a result of what appears to be a careless mistake on UNUM's part. In the parties' Joint Statement of Undisputed Material Facts, the parties jointly assert that "UNUM approved Arnold's claim for disability benefits under the Policy in November 2005, with benefits being paid retroactive to May 2005." JSUMF ¶ 32. If that statement were true, Arnold's argument would have merit.

As it turns, however, UNUM *approved* Arnold's claim in May 2005 and paid benefits retroactive to September 2004. Green Supp. Decl. Exs. D & E. This fact is confirmed by two letters that UNUM sent to Arnold in May 2005 and August 2005 that clearly indicate the benefits were paid in May 2005, retroactive to 2004. *Id.* Arnold objects to the letters on hearsay and other technical grounds, but has not produced evidence that contradicts or otherwise casts doubt on the letters' content. The Court finds that the letters are admissible

11

business records and that they establish that Arnold was paid long-term disability benefits by UNUM in 2004, notwithstanding the statement contained in the parties' Joint Statement of Undisputed Material Facts. Accordingly, UNUM did not err in using part of the 2004 settlement payment to offset Arnold's disability benefits.

In his final argument, Arnold asserts that UNUM abused its discretion by failing to subtract attorney's fees from the settlement payment before calculating the amount of the offset. On this point, the Court agrees.

"An ERISA plan administrator abuses its discretion if it construes provisions of the plan in a way that 'conflicts with the plain language of the plan.'" Saffle, 85 F.3d at 458 (quoting Taft v. Equitable Life Assur. Soc., 9 F.3d 1469, 1472 (9th Cir. 1993)). Here, the language of the offset provision could not be plainer: UNUM was permitted to deduct the amount of a third settlement payment only "after subtracting attorney's fees" from that payment. Green Decl., Ex. B at UACL00096. Thus, the Policy clearly required UNUM to deduct Arnold's settlement-related attorney's fees from the settlement payments before it calculated the offset. UNUM concedes that it did not do so. Reply at 8.

In its defense, UNUM argues that it was reasonable for it to ignore Arnold's attorneys' fees because there was no evidence in the administrative record that indicated "that any portion of the settlement payments went to Arnold's attorney." Reply at 8. The Court is not persuaded.

Several documents in the administrative record should have put UNUM on notice that Arnold incurred attorneys' fees in procuring the settlement from Chiron. For instance, the demand letter Arnold sent to Chiron stated that he was entitled to "attorneys' fees and costs," in addition to various damages. Green Decl., Ex. B at UACL01448. Perhaps even more to the point, the letter was sent to Chiron *by an attorney* acting on Arnold's behalf. Id. In addition, paragraph 19 of the settlement agreement between Chiron and Arnold states "The Parties hereto acknowledge that they . . . b) have discussed and reviewed this Agreement with their respective *attorneys*." Green Decl. Ex. B at UACL01453. And, in case there was any remaining doubt that Arnold was represented by an attorney during the settlement

12

1 negotiations, that doubt should have been conclusively dispelled by the fact that Arnold's
2 attorney, Bernadette Bantly, actually signed the settlement agreement. *Id.* at UACL01454.
3 In short, Arnold's demand letter and the Chiron settlement agreement, both of which were
4 part of the administrative record, were more than sufficient to place UNUM on notice that
5 Arnold was represented by an attorney during the settlement negotiations with his former
6 employer.

7 And that's not all. Though Arnold's tax returns do not indicate that he received
8 punitive or emotional distress damages, they do show that he paid for "legal and professional
9 services" in both 2004 ($5,375) and 2005 ($275). Green Decl. Ex. B. at UACL01329, 1347.
10 Thus, UNUM had at its disposal reliable information not only demonstrating that Arnold had
11 likely been represented by an attorney, but also providing a rough estimate of the amount he
12 paid in fees. By ignoring this reliable evidence, UNUM abused its discretion. See Abatie v.
13 Alta Health & Life Ins. Co., 458 F.3d 955, 968 (9th Cir. 2006) (en banc) (noting that an
14 abuse of discretion occurs where an administrator "fails to credit claimant's reliable
15 evidence"). Moreover, to the extent that UNUM needed more information from Arnold to
16 determine the precise amount of attorneys' fees he paid, it had a duty to "ask [him] for [the]
17 necessary evidence." Id. The insurer's failure to do so therefore also amounts to an abuse of
18 discretion.

19 In sum, the Court finds that UNUM did not abuse its discretion in concluding that the
20 settlement payment qualified as a "deductible source of income" under the Policy, but did
21 abuse its discretion in failing to subtract attorneys' fees from the settlement payment before

calculating the amount of the offset.[2]  Accordingly, the Court GRANTS summary judgment in Arnold's favor.[3]

With respect to the appropriate remedy, the Court cannot determine how UNUM's failure to account for attorneys' fees affected its calculation of Arnold's overpayment.  The Court therefore REMANDS the case to the claims administrator for a recalculation of the overpayment in light of this Court's decision.

### 2. UNUM is the appropriate defendant

Citing to the Ninth Circuit's decision in Everhart v. Allmerica Financial Life Ins. Co., 275 F.3d 751, 756 (9th Cir. 2001), UNUM argues, briefly, that it is not a proper defendant in this action.  Motion at 12-13.  Under Everhart, UNUM maintains, a plan beneficiary may not bring a § 1132(a)(1)(B) suit against a third-party insurer like itself.  UNUM's argument is unavailing.

As UNUM notes, the Ninth Circuit in *Everhart* concluded that it had "no reason to depart from the established precedent of this circuit, and of every other circuit that has expressly considered the issue, that § 1132(a)(1)(B) does not permit suits against a third-party insurer to recover benefits when the insurer is not functioning as the plan

---

[2] In reaching the conclusion that UNUM abused its discretion only in failing to subtract attorneys' fees from the settlement payment, the Court has taken into account the fact that, as both the claims administrator and the benefit plan funder, UNUM faces a structural conflict of interest.  See Montour, 588 F.3d at 630 (noting that the presence of such a "structural conflict of interest" is one factor "a reviewing court must take into account" when deciding whether "discretion has been abused").  In this case, the Court assigns the conflict little weight.  Unlike in Montour, there were no obvious "signs of bias" in UNUM's decisionmaking process.  Id. at 632-33.  UNUM initially submitted a reasonable request to Arnold that he provide the company with his tax returns.  After the insurer eventually received those returns, it asked for additional information before it concluded, again reasonably, that the settlement payment qualified as a "deductible source of income."  Put simply, with the exception of UNUM's handling of the attorney's fees issue, UNUM's decision appears to have been "the product of a principled and deliberative reasoning process."  Id. at 635.

[3] The Court is aware that Arnold did not move for summary judgment.  However, the Court finds that a *sua sponte* grant of summary judgment is appropriate.  Both parties briefed the issue of whether UNUM abused its discretion in failing to account for Arnold's attorneys' fees.  Opp. at 18, 23; Reply at 7-9.  Thus, UNUM had an "adequate opportunity to address the issues involved."  Fuller v. City of Oakland, Cal., 47 F.3d 1522, 1533 (9th Cir. 1995).  In addition, the parties have provided the Court with the full administrative record.  Thus, there are no issues of material fact regarding what information UNUM had at its disposal when it made its benefit determination.  Accordingly, a *sua sponte* grant of summary judgment is appropriate.  *See id.*

administrator." 275 F.3d at 756. In <u>Everhart</u>, all parties agreed that the employer, *not* the third party insurer, was "functioning as the plan administrator." <u>Id.</u> at 754.

In this case, by contrast, UNUM was "functioning as the plan administrator." <u>Id.</u> at 756. UNUM "provided plan documents to participants, received benefit claims, evaluated them and made benefit determinations, interpreted the terms of the plan, and made and administered benefit payments." *Cyr v. Reliance Standard Life Ins. Co.*, 525 F.Supp.2d 1165, 1172 (C.D. Cal. 2007). In fact, the Court is hard-pressed to think of any administrative functions that UNUM did not perform. Nor does the insurer identify any. Accordingly, the Court finds that UNUM was "functioning as the plan administrator" in this case and is therefore a proper defendant under <u>Everhart</u>. <u>See id.</u> at 1174.

## CONCLUSION

For all the reasons discussed above, the Court:

(1) finds that UNUM did not abuse its discretion in concluding that the settlement payment Arnold received from Chiron qualified as a "deductible source of income";

(2) finds that UNUM did abuse its discretion in failing to properly account for Arnold's settlement-related attorneys' fees;

(3) GRANTS summary judgment in favor Arnold and REMANDS this case to the claims administrator to calculate the appropriate offset, in light of this Court's decision; and

(4) GRANTS summary judgment in favor of Arnold on the issue of whether it may lawfully request copies of Arnold's tax returns.

**IT IS SO ORDERED.**

Dated: July 20, 2010

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

G:\CRBALL\2009\671\Order re MSJ.wpd                    15